Johnson, J.
Two questions are presented as grounds for reversal of this judgment: First, as to the construction by the court below of the agreement to appraise the damages made on October 23, 1878; second, as to so much of the charge of the court as relates to the effect of the several notices given by the eight different companies to restore the building, and the effect of the compromise with seven of the companies electing to z’ebuild upon plaintiff’s right to recover.
1. As to the effect of the agreement to arbitrate the value of the loss or damage sustained by the fire: upon this point the charge is as follows:
“ In this connection I will say to you that, under the provisions of the policy, it was optional with the insuz’ance company to indemnify the plaintiff for his loss, either in money or by rebuilding the building.
“If this agreement had been entered into prior to the notice to rebuild, I should Bay to you that it related to any subsequent acts of the parties, and that is so because its provisions relate to both modes of indemnifying the loss.
“ But having beezz entered into after serving the notice to rebuild, it must be considered as having reference to that provision of the policy relating to paying money as indemnity for paying the loss, and as waiving the contract to rebuild. Such portion of it as relates to other acts of the parties must be considered as irrelevant in the construction of the contract. The proper construction to be given to *411 this agreement is, that it relates to the question of the loss under the policy originally, and the payment of that loss in money. This is the view in which I feel compelled to require you to consider this agreement.”
To which charge, commencing with the word “ But,” at the beginning of the last paragraph, the plaintiff' then and there excepted.
2. As to the effect of the notices to rebuild, the duties and obligations created by the parties, and also the effect of the settlement with seven of the eight companies upon the right of the plaintiff to maintain an action against the eighth, the charge is as follows :
“ Under the policy the defendant had the right to indemnify the plaintiff by paying in money the damages by reason of the fire to the extent of the amount of its policy, or by electing to rebuild and repair the building, in which latter case it must give notice of its intention to repair and rebuild, in which event, on giving such notice, the relation of the parties changed, and it becomes the privilege and duty of the company to reconstruct the building substantially in the same condition as it was when destroyed, and this without reference to the amount of the policy, and the measure of damages for the breach of such a contract would be the cost of restoring the building to its former value and condition.
“ If there was but one policy, and consequently but one notice to rebuild, there would be but little difficulty in determining the rights and liabilities of the company; but iu this case there were several companies which gave notice of their intention to repair, and those notices were not independent of each other, but were all to the effect that the companies, acting jointly with the others, intended to repair and rebuild the building. This defendant gave no notice of its intention, alone and independent of the other companies, to rebuild. It did not say, with its $1,000 policy, it alone would restore the building that would cost more than $30,000, and upon which there was other insurance to an amount of some $30,000 or more, wfithout the *412 assistance of such, other companies. But its notice was that it is the intention of this company, acting jointly with other insurance companies claimed to be interested, to repair and rebuild the premises. Its undertaking was to rebuild jointly with the other companies representing $28,000 of insurance on the damaged building, which companies had served like notices.
There being no objection to the form or substance of those notices, the plaintiff must be held to have accepted them with all the obligations they imposed upon him, and all the rights they gave the defendant, and duties they imposed upon it and the other companies acting jointly with the defendant. Among these were the duty and liability of each and all of these companies to aid in and contribute ■to the repairing of this building, and in the event that the defendant should be compelled to rebuild alone, it could compel contribution proportionately from all the other companies joining in the enterprise.
“ It imposed upon the plaintiff the duty of not interfering with these obligations and rights of the defendant, and thereby preventing it from performing its obligations to him. He was not authorized to settle with the other companies and take from them the money which they had pledged. Both the defendant and plaintiff should be used jointly with that of the defendant in repairing the building, and to keep the money without offering it to defendant, as the companies were bound to do in furtherance of the common object, and in doing which to prevent the defendant from the right of enforcing contribution from such other companies. It was his duty to permit the defendant to repair the building pursuant to its notice, and not by his act to put it beyond its power to do so. The defendant claims he did this; the plaintiff denies it.”
To which charge, commencing with the words, “ If there was but one policy,” etc., the plaintiff then and there excepted.
The court, by request of defendant, further charged the jury on the same point as follows:
*413 “ The plaintiff in this action, not claiming the right to recover upon the policy, but solely upon the notice of the intention of the defendant to rebuild and for damages resulting from defendant’s failure to rebuild under and pursuant to its notice, I say to you, if you find from the evidence the fact to be that other companies, having concurrent insurance with the defendant upon said building to the amount of twenty-eight thousand dollars, served upon the plaintiff notices, the same as served by the defendant, of their intention, acting jointly with this defendant and other insurance companies having such insurance on said building, to repair and rebuild the same, and that after such notices were so served, the plaintiff settled with those.other companies and released them from all claim he had upon them or either of them, and also from all right to any claim he had upon them or either of them, and also from all right to any claim under said notice to rebuild, 'and retained the money thus received, without offering to aid the defendant with the same to the extent that such companies were bound to aid it in rebuilding; then I say to you, the plaintiff forfeited his right to require the defendant to rebuild under its notice, and he can not maintain this action, and your verdict should be for the defendant.”
To which charge, as so given, the plaintiff excepted.
The court, by the request of the defendant, further charged the jury as follows:
“ If you find from the evidence the facts to be that other insurance companies than the defendant had, with the defendant, concurrent insurance on said building to the amount of twenty-eight thousand dollars, and the said companies served upon the plaintiff like notices of that served by the defendant, of their intention acting jointly with the defendant and the other companies, they intended to rebuild and repair said building, and that after such notices were served, the plaintiff settled with all of said companies, except the defendant, and released said companies and each of them from all obligation or claim of the plaintiff upon them, or either of them, to repair or rebuild said *414 building by reason of said notices or otherwise, and this defendant, after such settlement and release, notified the plaintiff that it could not and would not alone rebuild because of such settlement and release by him, and he then proceeded to repair and rebuild it himself, and then entered into an agreement in pursuance of the conditions of said policy, to have an appraisement of the damages to said building by reason of the fire, and said appraisement in pursuance of said policy and agreement was had, I say to you that such facts would constitute a waiver of any claim against the defendant for not repairing or rebuilding said building, and he could not sustain this action, and your verdict should be for the defendant.”
To which charge the plaintiff then and there excepted.
The plaintiff requested the following charge touching the agreement submitting the loss and damage to appraisers :
“ That, in determining whether the plaintiff waived his claim under the agreement to rebuild, the jury may consider any testimony that has been given to them tending to show that the plaintiff, on signing the agreement which has been offered in evidence appointing David W. Thomas, William H. Smith, and Frank Lukesh as appraisers, understood it to be an agreement submitting to said appraisers to determine the amount of damages to be paid by the defendant to the plaintiff on account of the defendant’s failure to comply with its agreement to rebuild.” Which request the court refused to give; to which refusal to so charge the jury, as requested, the plaintiff excépted.”
As the conclusion we have reached upon the second point above stated will aid in determining the first, we will consider these questions in the reverse order of their statement. Upon this point the charge of the court was, in substance, that though the several notices to rebuild, were severally signed by the respective companies, yet the contract to rebuild was a j oint contract with respect to the rights of the plaintiff, and that the settlement by plaintiff with seven of the eight companies so electing to rebuild, and re *415 leasing them from all liability, defeated plaintiff’s right of action against the other electing companies. Independent of statute, and of the provisions contained in this policy, this result, upon common-law principles, would follow; but, in determining whether this election by defendant to rebuild, acting jointly with other companies, created a joint obligation as respects the plaintiff’s rights, reference must be had to the terms of the policy itself.
This policy was but one of several covering the same property. It contemplated other insurance: it stipulated that, in case of such insurance, the assured should not “ be entitled to recover of this company any greater portion of the loss or damage than the amount hereby insured bears to the wholé sum insured on said property . . . without reference to the solvency or liability of other insurance.” This stipulation is one in favor of the insurer, and makes its liability several and not joint. It gave to the plaintiff, in case of loss or damage, a right of action against this company for its proportionate share of the damages sustained for not rebuilding, prorated with reference to the amount of concurrent insurance.
The words of the condition are: “In no case” can the insured recover more than said pro rata share. There is another limitation to the amount of the recovery: the assured can not recover beyond his actual loss. After the insured has elected to rebuild, and has entered upon the performance of his contract, the contract of indemnity may be discharged by rebuilding. If there is a failure to rebuild, the insurer becomes liable for the damages sustained by the plaintiff for such failure. Whether the plaintiff, in case of such failure, is restricted to his action for damages for not rebuilding, or may elect to treat this electiou to rebuild as abandoned, and may sue upon the policy as an indemnity contract payable in money: that is, whether the right to treat it as a money indemity, the same as if no election had been made to rebuild, was merely suspended until such failure, as is held in some states, or became extinguished, leaving a right of action on the building *416 contract as plaintiffs sole remedy, we need not now determine. As a contract of indemnity payable in money, it was clearly several in its nature, though there was concurrent insurance. We think that the same provisions of the policy,'which requires several actions thereon to recover a money indemnity, are equally applicable to the liability of this company for damages for failure to rebuild. Each company would, in such case, be severally liable for its fro rata share of the loss and damage, not exceeding the ¡interest of the assured in the property. In case of concurrent insurance, and no election to rebuild, the action must be against each for its pro rata share of the loss, not exceeding plaintiffs loss. If any of the companies are insolvent, this loss must fall on the insured. Defendant did not undertake to share any loss to the plaintiff, whether arising from insolvency, or non-liability of other insurance, or by compromise on other policies.
Plaintiff could insure in as many companies as he chose. By the terms of this policy he could only recover defendant’s pro rata share. This is equally true, whether in an action for failure to rebuild or in one to recover indemnity in money. If the action is for not rebuilding, the damages may exceed those if the suit is for money, where there is no election.
Where the aggregate loss exceeds the insurance, and the insurer elects to rebuild, the damages, unless limited by the terms of the policy, must equal the cost of restoring the building.
In case of concurrent insurance, and some of the companies elect to rebuild and others do not, and there is no prorating clause, there is a separate cause of action against, each for failure to rebuild, when there is no subsequent agreement converting the policies into a joint contract. The giving of these notices was the sole act of the insurers. Plaintiff had no option. This did not operate to convert |a several into & joint obligation as against plaintiff, whatjever its effect as between the insurers themselves. If there was no prorating clause, such as is found in this policy, *417 and no limitation on the amount of liability to rebuild, each of several companies electing to rebuild would be liable to rebuild, and several actions for a failure could be maintained, but there could be but one satisfaction for the amount of actual loss.
Where several elect to rebuild and one only does so, the plaintiff’s claim is satisfied as to all, and the one so performing is left to his right of contribution, whatever that may be, against the others electing or non-electing.
Under this policy, the election to rebuild did not defeat plaintiff’s right to recover.of those not electing, when the building contract was not performed.
If those non-electing paid in money before the building was replaced to plaintiff, it would diminish the amount of recovery for a failure to rebuild, as plaintiff’s right extends only to an indemnity for his actual loss. If paid after the building was replaced as before the fire, it in equity belongs to those rebuilding.
In the policy before us, the liability of defendant is expressly limited' to its pro rata share of the amount lost. Hence, plaintiff’s recovery of other companies by compromise, or otherwise, does not affect the amount to be collected of defendant. And where one of the several policies is for the benefit of a mortgagee of the insured property, upon a mortgage made by the insurer, this is other insurance, to be taken into the account in ascertaining defendant’s pro rata share of the loss. Payment to the mortgagee is payment pro tanto of plaintiff’s loss.
In the case at bar, eight of the ten companies having concurrent insurances, elected to rebuild. This did not defeat the right of plaintiff to recover of those not electing, upon their respective policies, for the amounts for which they were liable; but, as the insured can have but one satisfaction for his actual loss, and as there is a separate contract with this defendant limiting his liability to his pro rata share, without regard to the solvency or liability of any other insurer, this defendant is liable only *418 to prorate with, other insurers for damages resulting from a failure to rebuild. To illustrate: The damages, as found by the appraisers, was $32,990 The aggregate insurance was $33,000; and the defendant’s, policy was $1,000. Prorating this loss according to the terms of the policy, defendant would be liable for $999.69. The option to rebuild was a mode of payment of the damages covered by the policy reserved for the benefit of the insurer. And damages for failure to rebuild is as much indemnity, payable in another form, for the loss covered by the policy, as if the same was payable in money where no election had been made. The terms of the policy are explicit. “ In no case shall the claim be for a greater sum than the actual damages. . . . Nor shall the assured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby insured bears to the whole sum insured on said property.” This clause follows that which gives the election to rebuild, and in express terms applies to claims for damages arising from a failure to rebuild. It follows, therefore, that while these notices to rebuild, served by the respective companies on July 24, 1878, may, as between such companies, create a joint obligation, yet as to this plaintiff, his right of action and the amount of his recovery for failure to rebuild is several against the several companies who were liable in damages, and the amount of his recovery is to be prorated in each case accordingly, as provided in the policy. In such prorating the aggregate insurance, including the two companies not electing to rebuild, is to be taken into the account in ascertaining defendant’s proportion of such loss. If we assume, however, that the court below was correct in charging that this was a joint building contract, still there was error in charging that the settlement made by the plaintiff with seven of the joint contractors discharged the other. This was so at common law, but is not so under our statute (Revised Statutes, secs, 3162 to 3166). These sections authorize a composition or compromise with one or more joint debtors, without discharging the others, and *419 without impairing the right of action against such others. In such, case, the settlement of the joint debtor is equivalent to a payment of his proportionate share of the debt. It leaves the right of action against the other debtor intact for its proportionate liability on the obligation.
As to the effect of the agreement to arbitrate the damages. This agreement was entered into October 23, 1878. The plaintiff had compromised with seven of the eight companies after they had converted their policies into building contracts. The testimony shows that Foust, the agent of the company, then visited Akron for the purpose of settling the controversy between plaintiff and defendant. He had heard of this release of the other seven companies before he left home, and had been notified to fulfill his contract. He went for the purpose of adjusting his company’s liability. He then did not claim that defendant was dischai’ged from all liability by reason of the release of the other seven companies.
The plaintiff had already resumed possession and had made some preparations to rebuild. He (Foust) made two propositions for a settlement: first, to compromise on the same basis as plaintiff' had compromised with the other seven companies; or second, to have appraisers to assess the actual loss occasioned by the fire. The parties being unable to agree to the first, this agreement of submission to appraisers was entered into. The court charged the jury that this of itself was a waiver of all right to recover in an action for damages for failure to rebuild ; that as matter of law it related solely to au adjustment of the loss under the policy, and did not relate to a loss for failure to rebuild. In this we think the court erred. Before entering into this agreement the company was distinctly informed that the plaintiff was not claiming under the policy for money indemnity, but for not rebuilding. Under these circumstances the parties agreed to submit to appraisers the sole question of the actual cash value of, or damage to such property, and the award of the appraisers was to be binding on both parties so far as regards such appraisement, *420 the other matters of difference between the parties within the terms and conditions of the insurance being left for adjustment by the parties. In view of the matters in difference at the time of the plaintiff’s claiming his right to damages for failure to rebuild, the defendant offering to compromise, and not denying his liability in some amount, this agreement may be regarded as referable to the controversy between the parties, namely, the amount which defendant should pay, whether based upon the contract to rebuild or on the policy as an indemnity. There is nothing in the agreement showing the intention of the parties to limit such appraisement to a claim upon the policy as a contract of indemnity. They were to ascertain the amount of loss or damage to the property. This mode of ascertaining the loss and damage is expressly provided for in the policy, and independent of this provision of the policy it was competent for the parties to refer .this question to arbitrators and make their award binding.
As we have adjudged that at the time this agreement was entered into, there was an existing liability of defendant in damages for failure to rebuild proportionate to its fro rata share of insurance, the appraisement made under the agreement would become a material factor in determining its share of such damage. That amount known, the amount of defendant’s liability would become a mere matter of calculation. The plaintiff by entering into this agreement can not, as a matter of law, therefore be said to have waived an existing right of action. The agreement had the same force and effect as a method of adjusting the loss and of settling that question, whether his suit was on the policy or upon the contract to rebuild. The facts and circumstances clearly show that it was not the intention of plaintiff to waive or abandon his right under the policy as a contract to rebuild. He was simply agreeing to a mode of assessing the loss or damage by fire, which, when settled, would be binding on both parties, unless set aside, leaving all other questions to be determined by the parties themselves or by litigation.
*421 The amount of damages when ascertained, by whatever mode, was a necessary factor in arriving at the pro rata share of defendant’s liability, whether the action was upon the contract regarded as an indemnity payable in money, or as a rebuilding contract. It was error, therefore, in the court to leave out of view the circumstances under which this agreement for an appraisal of damages wa& made, and to charge that it was solely referable to the contract of insurance payable in money, and was therefore a waiver of an existing claim or demand for damages for failure to rebuild.

Judgment reversed.